Eric Hoffschneider v. Kilolo Kijakazi, case number 18-15504, and parties will have 10 minutes for argument on each side. Counsel, you wanna begin? Thank you. May I please the court? I represent Eric Hoffschneider. His case, he applied in 2014, and he unfortunately has, as you know, a genetic back disease where he had three operations. And during the, between the two, the second and third, he had a remission. He was able to operate, worked for 11 months, and then his back went out again. And unfortunately, this is just error, because during that time, that 11 month time before he applied for disability, that's when the ALJ used that as evidence that he was okay, he could work. But he can't work, and there's, he's had so many back operations, three of them, and he's had a, has a spine stimulator. So we have all the experts, orthopedics, neurological experts, but the ALJ didn't use those, or didn't even address them. So the issue- Ms. George, may I ask, as I was reviewing the administrative record, I saw that there, he is complaining of back pain from many different doctors, sometimes very severe pain. I did not notice it, but has any doctor ever suggested that he was malingering or exaggerating his pains to anyone? No, no, not one doctor. No, he's, he was, you know, he worked in a winery, a woodworker. He's a very physical person. He, you know, was chopping wood. He's not, this has been pretty bad, and it's just an unusual situation where his, his, the disc keeps resting on his nerve. And we're under the old regulations for treating physician, which I think are implied in the future. But in this case, a specialist, if you don't have another specialist, and he's got three or four, they, they're credited as true, because they are a specialist in their area. He has his treating physician, was given partial weight, Dr. Berg, and really, this is just, I think it's just error, that, you know, just an accident of looking through the record really fast, maybe, you know, an Adobe search or something, but it's a complicated case, but there really isn't evidence that says he can, I mean, he's still, he can't have a third operation because his back's so deteriorated. So he's just stuck until someone comes up with something to help him. And the ALJ found that his pain was being treated more or less, or managed. I take it you disagree with that? What, what would you point to in the record to suggest that that's not the case? Well, yes, Dr. Botello says he's in pain 100% of the time, that's on page 837. He has a spinal stimulator that distracts the pain. So it, sometimes it works and sometimes it doesn't. He's had morphine, you know, oxycodone, every possible pain management to try to alleviate it, but it's, you know, I spoke to his wife two days ago and it comes and goes, you know, there are lapses. I'm not sure what you spoke two days ago is in the record. I just meant that it's lapses. I talked to his wife. I mean, it's not evident. I'm just saying that it lapses, it comes and goes in severity. Can I ask you a question? Yes. We don't know what the facts are. And traditionally in every other context, generally, if there's a factual dispute, we send it back. We say, you are only picking a particular area due to completely resolve of the record because we have a peer camp. We don't know what the facts are. Right. Is this something different that we couldn't send it back and say an argument has been made that it has not been a full disclosure of all of the facts and we want additional information? Well, the problem here, Your Honor, is that it's 2014 and we have all the specialists saying what the situation was. We have x-rays, we have specialists. It would be, I mean, it would be the same review. You would say, yes, those are specialists in the record. They do say that. There's no one else to bring up to review the same records. And under the statute at that time, they are credited. So that would be my take on that and I hope yours. Well, I don't know. This is so different from every other context. I just wondered if there was a way, if we thought there was not a complete determination of the factual issues that we couldn't send it back to the ALJ to make a record on the issue. Otherwise, we're guessing because we can't make factual determinations on appeal. I just wondered if there is a way of doing that. Well, the credit is true doctrine, right? If the specialists are not contradicted because the regulation said that at the time, then, I mean, they couldn't come, it seems that credit is true doctrine would apply just because of the evidence being specialists in their area of expertise. Do we ever know that? Yes, yes, the credit of true doctrine. We all want the credit of a true doctrine, but it's in there. So we have the specialists, we have them saying he's 100% in pain and disabled and functionally limited. And the x-ray say that, the MRI say that, and there is no contradictory specialist that's saying, oh, no, I think he could, there isn't any other evidence. There's no contradictory evidence at all. Not of specialists, no. Okay, no, top of a specialist because there's no ruling saying that you have to believe all specialists. You asked my question. Actually, that's- Is there any other evidence in the record that is different from what you claim the situation is? Well, my colleague might say there is, but in that time point, the commissioner was using the treating doctor rule that the specialists, it says opinions from specialists must be given greater weight in their area of specialty. So we have orthopedic surgeon, we have a neurologist, we have a neurological surgeon, we have- I think you haven't, I don't think you've understood my question. My question is, are there other evidence? You keep coming back to the specialist. Are there other evidence in the record that would support the ALJ finding? Well, I don't think so, no. No, I'm sorry, I'm sorry. I'm misunderstanding. Tell me the record. The record isn't what you think. Right. You mean, could the ALJ come up with other ruling? The way I read it, no, I don't see how they can come up with any other options. The way you read, would you just answer my question? Okay, yes. Are there other evidence in the record that contradicts the position you're taking? There are non-treating doctors, non-observing doctors in the record that do say differently, but the regulations weigh them at that time, weigh them differently. So there is contradictory evidence. I hope I've answered it directly, but it's not, you know, it's someone who's never seen him or somebody who's out of context. I hope I answered that. Okay. Thank you. Oh, okay, sorry. I reserved the next two minutes, sorry. Thank you. Ms. Bond. Good morning, Your Honor. Ms. Shea Bond on behalf of the Commissioner of Social Security. To answer Judge Wallace's last question, there is contradictory evidence in this record that would support the ALJ's conclusion that the claimant was not disabled and retained the greatly reduced functional capacity for a reduced range of light work. And that is the DDS medical consultant opinions. Both medical consultants had an opportunity to review a significant portion of this record and reached the conclusion that yes, this claimant absolutely has a significant severe back impairment from which he's received some significant treatment and he is in pain. But the regulations, the act and this court's circuit precedent establishes that the claimant doesn't have to be absolutely pain-free to be able to function in a work setting. It's just what is the functional capacity that is left over that's the most the claim can do even if he is in pain. And here we have the state agency opinions have stated that after taking this record into consideration those pain complaints, the evidence that the objective findings just really weren't that remarkable. Yes, the MRI showed back pain and underlying back condition. Well, Ms. Bond, can I might interject. The ALJ seemed to suggest that there was no objective evidence supporting the claimant here, which I found somewhat remarkable given that there are the MRI results especially from 2013 that wasn't really discussed by the ALJ. You have increasing dosages of increasingly intense pain medication. You have, as counsel mentioned, specialists like Dr. Hunstock that found significant limitations in pain across multiple doctors and yet much of this was not discussed in the ALJ's findings. Can you speak to that? It seems like much of the discussion was either cherry picked or omitted in relation to material evidence in the record. Well, I would say that the ALJ didn't discuss every piece of evidence. We can, we all understand that. But the, I think the ALJ's decision shows that the ALJ understood the nature of this impairment that the ALJ recognized that he had a failed back surgery. That's the severe impairment. And the ALJ talks about the post-laminectomy syndrome throughout the record. It's on page 17, I believe 18 of the administrative record. The ALJ is recognizing that the claimant did go in and recognize when he did complain that he was having pain despite having say epidural injections that he had residual pain. But the ALJ then also goes in and the ALJ also recognizes on page 18, the first full paragraph in talking about the credibility of the claimant's allegations, recognizing that he had received various forms of treatment and that would normally weigh in the claimant's favor. So the ALJ is recognizing that the claimant did seek significant treatment for these allegations of pain, but then also reviewed the parts of the record that showed that the treatment did provide some relief. Now, was it complete relief all the time? Again, no. We fully recognize that. Isn't that the important point though? The ALJ is characterizing the relief as being under control or steady when there is objective medical evidence that shows otherwise. And can you speak in particular to the omission of Dr. Hunstock's opinion altogether, where he described significant mobility limitations, 30% limitations, reflexes, and that was never mentioned. Or Dr. Cardi, other things. It seems like very significant pieces of evidence were not mentioned or incorporated into the ALJ's analysis. Well, I would say that the ALJ did recognize, again, that the claimant did have certain limitations. And again, the fact that not every doctor's treatment record or report was described in great detail doesn't show that the ALJ didn't understand that the claimant did have limitations. So the ALJ did talk about the fact that there was MRI and x-ray evidence that shows the underlying degeneration. The fact that the ALJ didn't discuss every MRI that repeated that, and there was doctors, I think it was Dr. Lindy and Dr. Weissenberg who confirmed that the MRIs hadn't changed over time. So the fact that the ALJ didn't talk about each diagnostic test doesn't mean that the ALJ didn't understand that there was underlying impairment. Same thing with the discussion, I'm sorry. Why shouldn't we then apply the credit as true doctrine? If we take that the record is fairly complete in the manner of what's been discussed about the pain, and you have these material omissions, and the vocational expert, as I understand it, testified that if some of these additional limitations were incorporated into the functional capacity analysis, Mr. Hofschneider would not be able to work. Why shouldn't we apply that doctrine in this instance then? So the credit as true doctrine applies to medical opinion evidence, and we don't, from what I'm understanding, the nature of the evidence that you're describing, that isn't medical opinion evidence. It's results of diagnostic tests or statements about the claimant's treatment. There's no functional limitations described in that type of evidence. So if you're crediting it as true, you're not talking to any type of functional limitation that a doctor assessed. The only actual functional limitations that medical professionals assessed was Dr. Berg, and then the two state agency doctors, and those three opinions are conflicting. The two state agency doctors assessed the RFC for a reduced range of light work, which was essentially what the ALJ concluded, and then you have Dr. Berg who said that the claimant essentially couldn't work a full day. But the ALJ gave reasons for discounting Dr. Berg's opinion, but those are the only three medical opinions. So I know my colleague is stressing the credit as true rule, but is not really explaining how, if you credit an MRI result, well, the ALJ already found that the claimant did have a severe back impairment that causes limitations. So crediting that evidence doesn't get us anywhere. It doesn't add and it doesn't detract from the ALJ's findings. But going back to Dr. Hunstock's omitted opinion that he had significant limitations, which Dr. Berg relied on in order to come up with her own functional analysis, if you credit that evidence that was not reflected, how would that address this issue? Well, when I'm looking at Dr. Hunstock's report, I mean, he did say that the claimant had quote, unquote, good relief of the leg pain with the stimulator. We're going 804 at the record to 806. Dr. Hunstock also recognized that the claimant had normal strength, bulk and tone coordination. He did have some diminished reflexes, but he had normal gait balance and sensation. And he did have the limited back range of motion. But I would point out that the vocational expert actually testified that if the claimant was only capable of doing occasional bending and stooping and those types of activities, that the jobs that the VE identified were still available to this claimant. So if I'm thinking that you're crediting Dr. Hunstock's opinion is true, I don't think that necessarily gets us to the place where the VE testified that there were no jobs available. Dr. Hunstock recommended that the claimant had the permanent implantation of the stimulator, which he did. And the reason Dr. Hunstock recommended that was the quote, because he had a good result in relieving the radicular pain with the trial. So I don't think Dr. Hunstock's opinion is, again, correlating with a finding of disability. I think it actually goes to support the LJ's conclusion that this claimant was significantly limited. But even with those limitations, the claimant can perform the work that the VE identified. And going to your question about Dr. Berg relying on Dr. Hunstock. Again, when you look at this record and the clinical findings that were produced over this longitudinal period, and the statements from the claimant over this time as well that treatment was helping relieve the pain to a certain extent. And to that certain extent is where we arrive at the, or the LJ at least arrived at the RFC for this reduced range of light work. And we have the accommodations that were also based on the claimant's own statements that he needed to stand up or change position every 20 minutes from the sitting or standing or walking position. The LJ included that in the RFC finding. There's also an accommodation for the claimant being off task because of feelings of pain during the day. So I- But that off task at 5% would in essence mean that he has to, and this is consistent with Dr. Berg's own findings, lie down every, what is it, 10 to 15 minutes over a 45 minute period or over the hour period. Well- And a vocational expert said that if that were true, then there would not be any national work that would, where he would be employable under those circumstances. If that were adopted, that's what the VE said, that would be true. But again, the ALJ explained that Dr. Berg's opinion had lacked the type of objective findings that would have supported those extra, more extreme limitations. And so- If we find out the ALJ improperly discounted Dr. Berg without providing specific reasons for doing so, would we be in a position to be able to credit Dr. Berg's testimony to determine whether the credit is true doctrine should apply? I would say credit is true would not be appropriate here simply because we do have the conflicting evidence from the state agency, the two state agency doctors who reviewed this record and reached a different conclusion. So you do have that conflicting evidence. I would also point out that you- The state agency doctors reviewed this record from non-treating doctors and non-expert doctors, true? True, they were the reviewing physicians. However, there's nothing that precludes- Did they ever actually examine the claimant? The state agency medical consultants only review, they do not examine. That's right, so they never laid eyes on this man? I doubt that they did. So this, even in this circuit, state agency doctors are not always relegated to the bottom of the barrel. If their opinions are supported by the record, they can be substantial evidence supporting an ALJ's conclusion. And to answer the question, if going back to the credit is true, I would say that is the evidence that is conflicting that would preclude this court from making the factual determination that Dr. Berg's opinion should be accepted over the state agency doctors. Can I ask you a question relating to the question I asked your adversary? It strikes me that we're in not a good position to decide facts because we're not fact finders. Is there a possibility that if we conclude that other issues should have been discussed by the ALJ in coming to this conclusion that we could vacate and remand for that? That is, do the rules allow us that option of vacating and remanding for specific findings that we feel should be made? If I'm understanding Your Honor's question correctly, I believe that that is what the court has done in the past when it hasn't paid a case, is to remand back to the agency for further fact finding in a new decision. So if this court were to find, which we would disagree with, but that the ALJ needed to readdress certain evidence or certain issues, that certainly would be in the remand order. I just would point out though, if the question were veering into additional fact finding, this was a Dib Title II claim only, and there was a insured status issue. So I think his insured status expired in December of 2015. So there wouldn't be any additional fact finding in that sense. But the court certainly again could ask the ALJ to address issues that it felt were not addressed. I think that's what the court has done in the past. Okay, thank you. I would just like to conclude that we would please ask for the court to affirm the ALJ's decision. Thank you, Ms. Vaughn. Thank you. Ms. Girard, do you have the last word? There. So I just wanted to address the court's argument or questions about the credit is true doctrine. Because we have to remember this was back where the commissioner was very strong about specialists and treating, and I hope that comes again. Because these are back operations, inside operations, and obviously a doctor who's never seen Mr. Hofschneider or talked to him or watched him walk or watched his pain is not going to be valuable evidence. And the specialist's opinions are pretty strong on the functional, they're consistent with his own statements. So under Varney, which is, as you know, 859-1396, that allows the court to credit this case is true. It is there just to speed up the whole efficiency of this. There isn't any other evidence they're gonna come up with that says, oh, I don't see how they can come up with any other evidence. The facts would be the facts, and he was functionally disabled then. The specialists say that, there's no contradictory evidence. So, Your Honor, I'm open to any other question, and I'll be glad to submit anything after. I have no other questions. I'll ask my colleagues if they have any other questions. I'm fine, thank you. I'm fine. Thank you. Okay, we will call our next case.
judges: WALLACE, FLETCHER, SANCHEZ